USA v. JORDAN A. WILLIAMS, Case No 03-10110 - 7/26/17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

                                    Docket No. 03-10110

              Plaintiff,

   vs.                              Peoria, Illinois
                                    July 26, 2017
                                    10:31 a.m.
JORDAN A. WILLIAMS,

              Defendant.


   REVOCATION OF SUPERVISED RELEASE and FINAL DISPOSITION

        BEFORE THE HONORABLE MICHAEL M. MIHM
        SENIOR UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :

For the Plaintiff:        RONALD LEN HANNA, ESQUIRE
                          Assistant United States Attorney
                          One Technology Plaza
                          Suite 400
                          211 Fulton Street
                          Peoria, Illinois 61602
                          309-671-7050


For the Defendant:        SHARBEL A. RANTISI, ESQUIRE
                          Rantisi Law, LLC
                          5832 North Knoxville Avenue
                          Suite H2
                          Peoria, Illinois 61614
                          309-826-9900




Court Reporter:           LISA KNIGHT COSIMINI, RMR-CRR
                          U.S. District Court
                          201 South Vine, Suite 344
                          Urbana, Illinois 61802


Proceedings recorded by mechanical stenography; transcript
produced by computer.

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17     2

```
 1                    (In open court, 10:31 a.m.)

 2              THE COURT:  Good morning.

 3              MR. HANNA:  Good morning, Your Honor.

 4              MR. RANTISI:  Good morning, Judge.

 5              THE COURT:  This is the case of the United

 6   States of America versus Jordan Williams, Criminal Number

 7   03-10110.

 8              The defendant is in court, represented by his

 9   attorney, Sharbel Rantisi.

10              The United States is represented by Ron Hanna.

11              The matter is set today for a hearing on the

12   petition alleging violations of supervised release.

13              Mr. Rantisi, what is the status?

14              MR. RANTISI:  Your Honor, we're ready to move

15   forward on the, on the petition.  My client will be

16   admitting the violations contained in the petition,

17   subject to a few changes that I'm ready to address with

18   you whenever you want to hear that.

19              THE COURT:  Okay.  Pull that microphone over a

20   little, please.

21              Go ahead.

22              MR. RANTISI:  Okay.  So I've discussed these

23   proposed changes with Probation, as well as Mr. Hanna, so

24   I'll just kind of go down the line.

25              The first is on page 2, the fourth full
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1    paragraph.

2          PROBATION OFFICER COUR:  Your Honor, there will

3    be corrections to the violation memorandum is what

4    Mr. Rantisi is talking about.  Does the Court just want

5    to go through the petition first, and then we can go

6    through the violation memo?

7          THE COURT:  Yeah.  I'd like to go through the

8    petition.

9          MR. RANTISI:  Oh, the petition first.  I'm

10   sorry.

11         The petition, Your Honor, violation number 3,

12   at the bottom where, the sentence that starts -- it's at

13   the second line from the bottom; I take that back; it's

14   the fourth line from the bottom -- "A forensic search of

15   his monitored mobile device," that sentence will be

16   stricken, and everything will be stricken to the end of

17   that violation.

18         THE COURT:  And is that by agreement?

19         MR. HANNA:  Yes.

20         MR. RANTISI:  I believe so.  Yes.

21         THE COURT:  Okay.

22         MR. RANTISI:  Violation number 4, the last

23   sentence should read, "Offender Williams did not report

24   the email address JordanWilliams2@comcast.net."

25         Anything regarding the additional phone number

```
 1   should be stricken.

 2             THE COURT:  Okay.  Is that it?

 3                (Brief pause in proceedings.)

 4             MR. RANTISI:  Your Honor, the other proposed

 5   change I would make -- and I apologize; I didn't get a

 6   response before Court -- violation number 2, there's a

 7   number there, 50; we had proposed that that be changed to

 8   36.

 9             THE COURT:  Is there any objection to that?

10             MR. HANNA:  Your Honor, I, I will be submitting

11   evidence of a discharge summary that supports this

12   allegation of a, of the number that he represented to the

13   polygrapher of 50.  So there is an objection to that.  I

14   think it's accurate as far as the representation was made

15   to a particular person.

16             THE COURT:  Okay.  So how do we want to resolve

17   this?

18             MR. RANTISI:  Well, if I could just provide

19   some context --

20             THE COURT:  Okay.

21             MR. RANTISI:  -- and then -- on the one hand,

22   it's, it could be argued that we're splitting hairs; but

23   the way this was, first came out was during a polygraph

24   test.  The questioning was something like this:  "Mr.

25   Williams, how many people have you had sexual relations
```

1  with?"

2          The response was, "Oh, I don't know.  You know,

3  I didn't keep track."

4          The question was, "Was it over 25?"

5          The answer was, "Yes, probably."

6          "Was it less than 100?"

7          "Yeah, probably.  Approximately 50."

8          After having a chance to think about it after

9  the polygraph test -- you know, this was a question maybe

10  he wasn't prepared for.  After having some time to

11  consider it, he's represented to me that a more accurate

12  number is probably 36.

13          MR. HANNA:  Your Honor, I think this could be

14  resolved if we add some language, actually, to the

15  petition.  This says, "He was discharged for increased

16  risk and inappropriate behavior," et cetera, et cetera.

17          And then when we get down to the problematic

18  end of the sentence "and engaging in unprotected sex with

19  50 different partners," I think we can add the language

20  "and representing to the sex offender treatment provider

21  that he engaged in unprotected sex with 50 different

22  partners."  That's accurate.

23          And then Mr. Rantisi is in a position to argue

24  contrarily what the actual facts are in the course of

25  sentencing.

```
1            THE COURT:  Well, I think that -- it sounds

2    like technically that is accurate as you've amended it.

3    I certainly recognize the fact that he's now saying it

4    was less than that; and, frankly, from my point of view,

5    I don't think there's any material difference between 36

6    and 50.

7            MR. RANTISI:  And I understand.  Like I said,

8    we're probably in the arena of splitting hairs.

9            THE COURT:  Right.

10           MR. RANTISI:  And maybe the solution is

11   "between 36 and 50."  I would be okay with that, if the

12   Court wants to entertain that suggestion.

13           THE COURT:  Can we do that, between 36 --

14           MR. HANNA:  No objection by the government,

15   Judge.

16           THE COURT:  Okay, great.  That's the solution

17   then.

18           Anything else?

19           MR. RANTISI:  Not in the petition.

20           THE COURT:  Okay.  And then you said there were

21   some amendments in the violation memorandum?

22           MR. RANTISI:  Yeah.  I got ahead of myself

23   earlier.  I first started to mention on page 2, the

24   fourth full paragraph; my client would like to add --

25   he's not disputing the fact that there were two incident
```

1   reports, but my client would like the Court to know --

2   and perhaps have it added to the violation memorandum --

3   that those incident reports were later vacated.  I spoke

4   with Mr. Cour about this.  Mr. Cour did not have anything

5   supporting that, one way or another, or disproving that.

6   So that was just one suggestion we would ask be made for

7   that paragraph.

8           THE COURT:  Is there any objection to that?

9           MR. HANNA:  Your Honor, I don't know that it --

10  I don't know that it matters, --

11          THE COURT:  It doesn't.

12          MR. HANNA:  -- so no objection.

13          THE COURT:  Okay.

14          MR. RANTISI:  Page 2, the sixth full

15  paragraph --

16          PROBATION OFFICER COUR:  Your Honor, can I just

17  stop us.  For that fourth full paragraph, how, how does

18  the Court want that to read so we can file an amended --

19          THE COURT:  Just say, "Defendant reports that

20  those incident reports were later vacated."

21          PROBATION OFFICER COUR:  Thank you.

22          THE COURT:  Okay.  All right.  Paragraph 6.

23          MR. RANTISI:  My client reports that he

24  graduated from U of I-Springfield in December 2012; so we

25  would like the, that paragraph to be as accurate as

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1   possible since it's discussing his educational

2   background.

3            THE COURT:  Where did he graduate?

4            MR. RANTISI:  U of I-Springfield.

5            THE COURT:  But took the classes at ICC?  Is

6   that it?

7            MR. RANTISI:  On campus, here in Peoria.

8            THE COURT:  Well --

9            MR. RANTISI:  But not ICC.

10           THE COURT:  At the ICC campus?

11           MR. RANTISI:  No, no.  The U of I campus.

12           THE COURT:  Where is that?

13           MR. RANTISI:  I think it's housed downtown.

14           DEFENDANT WILLIAMS:  It's housed within ICC

15   downtown.

16           THE COURT.  Is there any objection to that?

17           PROBATION OFFICER COUR:  No objection from

18   Probation.

19           MR. HANNA:  No, Your Honor.

20           THE COURT:  All right.  Anything else?

21           MR. RANTISI:  Page 3, the fifth full paragraph,

22   so this goes on into page 4.  My client continued

23   treatment at Midwest Counseling up until April 11, 2016.

24   He would like language --

25           THE COURT:  Hold that a minute.  You talking

1   about the paragraph at the bottom of page 3 to page 4?

2          MR. RANTISI:  Correct.

3          THE COURT:  Yeah.  And what?

4          MR. RANTISI:  That he continued treatment at

5   Midwest Counseling up until April 11, 2016.  There's

6   about five or six months of treatment that's not

7   reflected, and -- even though he was discharged

8   successfully, Your Honor.

9          THE COURT:  Is there any dispute about that?

10          MR. HANNA:  No, Your Honor.

11          THE COURT:  So we can just add that?

12          MR. HANNA:  Yes.

13          THE COURT:  Okay.  When did he continue

14   treatment to?

15          MR. RANTISI:  April 11th of 2016.

16          THE COURT:  Okay.

17          MR. RANTISI:  Page 5, third full paragraph, I

18   spoke with Mr. Cour about, about this; and our

19   solution -- I'm not sure if the government has an

20   objection -- our solution was to strike the entire second

21   par-- second sentence.

22          THE COURT:  Which is?

23          MR. RANTISI:  "During a consent search of Mr.

24   Williams' car and home by U.S. probation officers of the

25   District of Kansas, several digital storage devices were

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1   discovered, including flash drive, SD card from an old

2   cell phone, several discs that were not reported to the

3   USPO."

4              THE COURT:  I can't find this.  Where is it

5   again?

6              MR. RANTISI:  This is page 5 in the third full

7   paragraph.

8              THE COURT:  The third full paragraph?

9              MR. RANTISI:  Yes, sir.  And it would be the

10  second sentence.

11             THE COURT:  Okay.  The parties agree as to

12  this?

13             MR. HANNA:  Yes, Your Honor.

14             THE COURT:  All right.  Okay.

15             MR. RANTISI:  That's it, Your Honor.

16             THE COURT:  All right.  So he's going to plead

17  guilty to these allegations as amended.  Is there any

18  agreement or understanding concerning what the

19  appropriate sentence should be?

20             MR. RANTISI:  There is not.

21             MR. HANNA:  No, Your Honor.

22             THE COURT:  Okay.  All right.  I think you can

23  stay seated.  You'll have to -- you'll have to pull the

24  microphone over.

25             Mr. Williams, this process of admitting these

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
 1   violations of supervised release will involve your
 2   answering a number of questions put to you while you're
 3   under oath.  So please raise your right hand.
 4                (Defendant sworn, 10:43 a.m.)
 5          EXAMINATION OF THE DEFENDANT BY THE COURT:
 6        Q    Now that you have been sworn, do you understand
 7   that your answers to my questions are subject to the
 8   penalties of perjury, or of giving a false statement, if
 9   you don't answer truthfully?
10        A    Yes, I do.
11        Q    What is your full name, sir?
12        A    Jordan Allen Williams.
13        Q    How old are you?
14        A    38 years old.
15        Q    How far did you go in school?
16        A    I've got a bachelor's of business
17   administration and a bachelor's of management.
18        Q    I'm sorry?
19        A    I have a bachelor's of business administration
20   and a bachelor's of management.
21        Q    Okay, great.
22             Have you been treated recently for any mental
23   illness or addiction to narcotic drugs?
24        A    I'm currently taking medication for depression.
25        Q    Is there anything about the medication you're
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1  taking that would in any way interfere with your ability

2  to understand what's happening here today?

3      A    No, Your Honor.

4      Q    So, you are currently under the influence of --

5  what is the drug?

6      A    It is Wellbutrin and Effexor.

7      Q    Okay.  Have you received a copy of the

8  petition; that is, the formal charges?

9      A    Yes, I have, Your Honor.

10     Q    Have you fully discussed those charges and the

11 case in general, including any possible defenses that you

12 might have, with Mr. Rantisi as your attorney?

13     A    Yes, I have, Your Honor.

14     Q    Are you fully satisfied with the counsel,

15 representation, and advice given to you in this case by

16 Mr. Rantisi?

17     A    I am, Your Honor.

18     Q    So as I understand it, you're going to enter a

19 plea of guilty to the amended allegations.  You have no

20 agreement or understanding with the government as to what

21 your sentence should be; is that correct?

22     A    That is correct.

23     Q    Okay.  Has anyone made any promises or

24 assurances of any kind to you in an effort to induce you

25 to plead guilty?

1      A    They have not, Your Honor.

2      Q    Has anyone attempted in any way to force you to

3  plead guilty?

4      A    They have not, Your Honor.

5      Q    Are you pleading guilty of your own free will

6  because you are guilty?

7      A    Yes, I am, Your Honor.

8      Q    You understand, because of this being a

9  revocation of supervision involving a sex-related

10  offense, this -- your sentence would likely result in a

11  substantial future restriction on where you may live or

12  work and with whom you may associate?

13      A    Yes, I am, Your Honor.

14      Q    So, in terms of the statutory penalties, as to

15  the count that you were originally sentenced on, as to

16  Count 1, there would be a, a maximum sentence of three

17  years that I could impose; on Count 2, a maximum sentence

18  of up to two years.

19          The policy statement, the guidelines statement

20  concerning custody, as to those would be four to

21  nine months.

22          As to supervised release, the Court could

23  sentence you up to life minus any term of custody imposed

24  upon revocation.  Under the policy statements, five years

25  per count minus any term of custody imposed upon

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
 1  revocation.
 2          You understand those are the maximum penalties
 3  that you face?
 4      A   I do, Your Honor.
 5          MR. HANNA:  Your Honor?
 6          THE COURT:  Yes.
 7          MR. HANNA:  As a matter of correction, the
 8  guideline range recommendation is four to ten months as
 9  opposed to four to nine.
10          THE COURT:  Four to ten?
11          PROBATION OFFICER COUR:  Yes.
12          THE COURT:  Okay.  Not four to nine, okay.
13  Thank you.
14  BY THE COURT:
15      Q   Do you understand that you have a right to
16  plead not guilty to these charges and to persist in that
17  plea?
18          You would then have the right to a, an
19  evidentiary hearing in front of a judge.  At that
20  hearing, you would be presumed to be innocent, and the
21  government would have to prove your guilt by a
22  preponderance of the evidence.
23          You would have the right to the assistance of
24  counsel for your defense, appointed by the Court if
25  necessary, at every stage of the proceeding; the right to
```

1   see and hear the witnesses and have them cross-examined

2   in your defense; the right on your own part to decline to

3   testify unless you voluntarily elected to do so in your

4   own defense; and the right to compel the attendance of

5   witnesses to testify in your defense.

6           Do you understand all those rights?

7       A   Yes, I do, Your Honor.

8       Q   Do you understand that should you decide not to

9   testify, or not to put on any evidence, those decisions

10  cannot be used against you?

11      A   I do, Your Honor.

12      Q   Do you further understand that by entering the

13  plea of guilty, if your pleas are accepted by the Court,

14  there will be no such hearing; and you will have waived,

15  or given up, your right to a hearing, as well as those

16  other rights associated with a hearing as I just

17  described them.

18          Do you understand?

19      A   Yes, I do, Your Honor.

20      Q   So, looking now at the petition, there are five

21  paragraphs alleging different violations.  Paragraph 1:

22  A law violation, Failure to Provide Critical and Truthful

23  Information as Required by the Kansas Sex Offender

24  Registration Act.

25          It alleges that on or about February 21, 2017,

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
 1  you failed to report an email address of
 2  JordanWilliams2@comcast.net to local police in Kansas
 3  City, Kansas, as required by the Kansas Sex Offender
 4  Registration Act.
 5           On February 3, 2005, you were convicted of
 6  enticing a minor to engage in sex and possession of child
 7  pornography in Case Number -- this case, 03-10110.  As a
 8  result, you were required to register as a sex offender.
 9           It alleges that you acknowledge that the
10  information contained in your registration form is true
11  and correct.
12           You further acknowledged that leaving out
13  critical and truthful information required of you could
14  be punished with new criminal charges under Kansas state
15  law.
16           On February 21, 2017, you registered as a sex
17  offender with the Kansas City, Kansas, Police Department
18  and reported email addresses with the exception of
19  JordanWilliams2@comcast.net.
20           You admitted to U.S. Probation Officer James
21  Cour you were using this email for SCRUFF, a social media
22  site to meet other males.  U.S. Probation in Kansas City
23  and the Kansas City -- and the Kansas Sex Offender
24  Registration Agency were unaware that you were using this
25  email address.
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1           Is this an accurate statement of what happened?

2      A    Yes, it is, Your Honor.

3      Q    So you were convicted here in this case; you

4  were on supervision here for a while, and then you

5  transferred out to Kansas City, correct?

6      A    Correct.

7      Q    You understood you had a duty to register in

8  compliance with the, with the Kansas Sex Offender

9  Registration Act?

10     A    I did, Your Honor.

11     Q    And did you understand that part of that

12 registration was to provide them, among other things,

13 with every email address that you have?

14     A    I did, Your Honor.

15     Q    And when you filed your -- you filed your

16 report with them on February 21, 2017.  Was that report

17 complete?

18     A    I failed to include the

19 JordanWilliams2@comcast.net email address.

20     Q    You understood you have a duty to do that?

21     A    I do understand.

22     Q    And you under-- and is it correct that you knew

23 that you were withholding that information from them?

24     A    Yes, I did.

25     Q    Okay.  How do you plead to that violation?

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1    Guilty or not guilty?

2        A    Guilty.

3        Q    Paragraph 2:  Failure to Participate in Sex

4    Offender Treatment Program.  Special condition 6 provided

5    that you shall participate in a sex offender treatment

6    program as deemed necessary by Probation.  You shall pay

7    for such services as directed.  You will submit to

8    physiological testing, including polygraph testing, which

9    may be part of a sex offender treatment program, as

10   directed.  You shall pay for the cost of such services as

11   directed.

12           It alleges, paragraph 2, that on about

13   March 17, 2017, you were discharged from Clinical

14   Associates' Sex Offender Treatment Program in Lenexa,

15   Kansas.  You were discharged for increased risk and

16   inappropriate behavior, which included using a hidden

17   smartphone to access online applications for meeting

18   other males for sex, posting naked pictures of yourself,

19   and engaging -- excuse me -- exchanging pictures with

20   other men, viewing pornography on the hidden mobile

21   device, consuming alcohol weekly, and engaging in

22   unprotected sex with 36 to 50 different partners.

23           You further disclosed two males whom, with whom

24   you engaged in sexual intercourse, which could have been

25   under the age of 18.

```
1              Due to your elevated risk, sexual

2    preoccupation, rejection of supervision conditions, and

3    continued alcohol use, you were discharged and

4    recommended to attend treatment in a secured and

5    structured environment due to your inability to manage

6    your risk in the community.

7              Is this an accurate statement of what happened?

8         A    Yes, it is, Your Honor.

9         Q    So, you were enrolled in this sex offender

10   treatment program at Clinical Associates' Sex Offender

11   Treatment Program?

12        A    Yes.

13        Q    And how long were you in that program?

14        A    Just shy of two months.

15        Q    Okay.  And then at some point, you provided

16   them with the information that's contained in the

17   allegations?

18        A    During the polygraph examination, I provided

19   that information --

20        Q    Okay.

21        A    -- to them.

22        Q    Including not only the number of male partners,

23   but also the possibility that a couple of them were under

24   the age of 18?

25        A    That is correct.
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1        Q      How -- why did you believe that a couple of

2    them could have been under the age of 18?

3        A      I failed to ask to see identification, and

4    their stories and indication of themselves after the

5    fact --

6        Q      Okay.

7        A      -- was suspect.

8        Q      All right.  Okay.  How do you now plead to this

9    violation?  Guilty or not guilty?

10       A      Guilty.

11       Q      Paragraph 3:  Failure to Install Filtering

12   Software.  Special condition number 4 provided you shall

13   not receive or transmit child pornography via the

14   Internet nor visit any website, including chat rooms or

15   bulletin boards, containing any pornography, including

16   child pornography.  You shall install filtering software

17   on any computer you possess or use which will monitor and

18   block access to sexually oriented websites.  You shall

19   allow the probation officer unannounced access to any

20   computer you possess or use which will monitor and block

21   access to sexually oriented websites.  You shall allow

22   the probation officer unannounced access to any computer

23   you possess or use to verify that the filtering software

24   is functional.

25              Paragraph 3 specifically alleges that from

1   about March of 2016 until the beginning of March 2017,

2   you possessed and used a second smartphone with Internet

3   capabilities.  You admitted to U.S. Probation Officer

4   Conn, as well as to U.S. Probation Officer Cour, that you

5   knew you were not supposed to use the secondary phone and

6   were using it to access online sites for the purpose of

7   meeting other males.

8           You allegedly destroyed this phone after a

9   failed polygraph examination, and it was not recovered

10  during the search of your residence.

11          You failed to disclose this device when asked

12  and did not include this device on the authorized

13  computer form you submitted to U.S. Probation authorities

14  in Kansas City, Kansas, on May 23, 2016.

15          Is this an accurate statement of what happened?

16      A   It is, Your Honor.

17      Q   So, it looks like, for about a year, you had --

18  you reported a, a phone that you were using; but then you

19  also had a second phone that was Internet-capable that

20  you did not report?

21      A   That is correct.

22      Q   So you wanted to keep that hidden from them?

23      A   That is correct, Your Honor.

24      Q   Okay.  How do you plead to this violation?

25  Guilty or not guilty?

1      A      Guilty, Your Honor.

2      Q      Paragraph 4, Failure to Submit a Truthful and

3 Complete Written Supervision Report.  Standard condition

4 number 2:  You shall report to the probation officer and

5 submit a truthful and complete written report within the

6 first five days of each month.

7             Paragraph 4 specifically alleges:  For the

8 month of May 2016 you failed to submit a truthful and

9 complete written report to U.S. Probation authorities in

10 Kansas City, Kansas.  You did not report the email

11 address, JordanWilliams2@comcast.net.

12             Is this an accurate statement of what happened?

13     A      Yes, it is, Your Honor.

14     Q      So you did, in fact, make a monthly report to

15 the Probation Office in the first five days of the month?

16     A      Yes, I did, Your Honor.

17     Q      And in this May report, was that truthful,

18 accurate, and complete -- the report you filed?

19     A      It was not, Your Honor.

20     Q      And in what way was it not?

21     A      I chose to not include the email address

22 JordanWilliams2@comcast.net.

23     Q      How do you plead to this violation?  Guilty or

24 not guilty?

25     A      Guilty, Your Honor.

1      Q    And paragraph 5, Possession and Use of Alcohol.

2   Condition number 7:  You shall refrain from any use of

3   alcohol and shall not purchase, possess, use, distribute,

4   or administer any controlled substance or any

5   paraphernalia related to any controlled substance, except

6   as prescribed by a physician.

7           Paragraph 5 specifically alleges that on

8   June 24th, August 10th, November 4th, and December 1st of

9   2016, you admitted consuming alcoholic beverages, despite

10  U.S. Probation Officer Conn's instructions not to consume

11  alcohol because of your conditions of release.

12          Further, on February 2, 2017, monitoring of

13  your mobile device detected that you were drinking to

14  excess, as evidenced by text messages.

15          Is this an accurate statement of what happened?

16     A    Yes, it is, Your Honor.

17     Q    So, it sounds like you were pretty commonly

18  drinking alcohol, even though you were prohibited from

19  doing that?

20     A    Yes, I was, Your Honor.

21     Q    This reference to February 2nd, tell me about

22  that.  What did you say in the text message?

23     A    I don't recall specifically what I said.  I

24  would imagine that I was engaging in a conversation with

25  one of my coworkers that I was out at a bar and drinking.

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1     Q     This suggests that maybe you admit -- you

2     admitted that you drank to excess?

3     A     I -- we more than likely did.

4     Q     Okay.  How do you plead to this, these

5     violations?  Guilty or not guilty?

6     A     Guilty, Your Honor.

7          THE COURT:  It is the finding of the Court in

8     the case of the United States of America versus Jordan

9     Williams that the defendant is fully competent and

10    capable of entering an informed plea; that the defendant

11    is aware of the nature of the charges and consequences of

12    his pleas; and that the pleas of guilty are knowing and

13    voluntary pleas.  The pleas are, therefore, accepted; and

14    the defendant is now adjudged guilty of these violations.

15          In anticipation of today's hearing, the Court

16    had directed the Probation Office to prepare an updated

17    presentence report.  That was done.  Copies were made

18    available to everyone, including the defendant.

19          Mr. Rantisi, have you had a reasonable

20    opportunity to read this report and review it with your

21    client?

22          MR. RANTISI:  Your Honor, if you're referencing

23    the violation memorandum, then, yes, I have; and I have

24    reviewed it.

25          THE COURT:  And that's -- and we've made some

1    amendments to that based on that.

2            MR. RANTISI:  Yes, sir.

3            THE COURT:  Okay.  Other than the amendments

4    we've already made, is there anything else in the report

5    you feel is inaccurate or incomplete that you wish to

6    challenge?

7            MR. RANTISI:  No.

8            THE COURT:  Thank you.

9            Mr. Williams, have you had a reasonable

10   opportunity to read this report and review it with your

11   attorney?

12           DEFENDANT WILLIAMS:  Yes, I have, Your Honor.

13           THE COURT:  Other than the amendments that

14   we've already made to the report, is there anything else

15   in the report you feel is inaccurate or incomplete that

16   you wish to challenge?

17           DEFENDANT WILLIAMS:  No.  I do not, Your Honor.

18           THE COURT:  You understand you have the

19   opportunity to present evidence in mitigation here this

20   morning?  You also have the right to make a statement to

21   the Court on your own behalf before I impose sentence.

22           Do you understand?

23           DEFENDANT WILLIAMS:  Yes, I do.

24           THE COURT:  Mr. Hanna, are you aware of

25   anything in the report that is inaccurate?

 1            MR. HANNA:  No, Your Honor.

 2            THE COURT:  Does the government have any

 3  additional evidence to present?

 4            MR. HANNA:  Just briefly, Your Honor.  In

 5  advance of today's hearing, Probation provided a copy of

 6  the discharge summary from March 18, 2017, Clinical

 7  Associates in Kansas.  I've labeled that Government's

 8  Exhibit 1 and would like to tender that to the Court at

 9  this time.

10            THE COURT:  What is the date on that?

11            MR. HANNA:  March 17, 2017.

12            THE COURT:  Okay.  Is there any objection?

13            MR. RANTISI:  No objection.

14            THE COURT:  All right.

15            MR. HANNA:  May I approach, Judge?

16            THE COURT:  You may.

17            May I see that?  Thank you.  I don't think I've

18  seen this.  Let me take a minute and read this.

19                 (Brief pause in proceedings.)

20            THE COURT:  Okay.  I have read this.

21            MR. HANNA:  And, Your Honor, due to the

22  sensitive nature of that document, the government's going

23  to request that that exhibit be placed under seal.

24            THE COURT:  I assume there's no objection to

25  that?

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
1              MR. RANTISI:  No.  There is not.

2              THE COURT:  Okay.  It will be placed under

3    seal.  Thank you.

4              MR. HANNA:  And we would further proffer that

5    if Probation Officer Jim Cour were called to testify,

6    Your Honor, that he would state that the defendant, Mr.

7    Williams, disclosed to the Probation Office in December

8    of 2013 that he was HIV positive.

9              THE COURT:  Okay.  Thank you.

10             I don't recall that that's in the presentence

11   report anywhere.  Is it?

12             PROBATION OFFICER COUR:  It is not, Your Honor.

13             THE COURT:  Okay.  When was that disclosed by

14   the defendant?

15             MR. HANNA:  In December of 2013.

16             THE COURT:  '13, okay.

17             Mr. Rantisi, I would note, first, that I did

18   receive -- let's see, I received a note from his mother.

19   I received -- one, two, three -- four other letters of

20   support.  I have read each of them, and they will be made

21   part of the public record in the case.

22             Do you have any additional evidence?

23             MR. RANTISI:  No, sir.

24             THE COURT:  All right.

25             MR. HANNA:  Judge, I would like to address one
```

1  more matter.  I would like to state that Mr. Williams did

2  raise this issue with regard to his HIV condition in the

3  detention phase of this case when he disclosed the needed

4  medication for this particular condition that he has

5  before the magistrate judge.

6          THE COURT:  Okay.  Hold on a second.

7            (Brief pause in proceedings.)

8          THE COURT:  I note in looking at the proposed

9  conditions of supervision that there's no mention of, of

10  the HIV positive.  Is that because Probation doesn't

11  believe that there's any need for that?  Or what?

12          Frankly, I'm a little concerned here because,

13  apparently, the sexual contacts that he had while he's

14  been on supervision, according to his own statements,

15  appear to involve sexual contacts where not every partner

16  knew that he was HIV positive.

17          PROBATION OFFICER COUR:  That's correct, Your

18  Honor.  It is not in the violation memorandum.  The

19  defendant had indicated to Probation that his status is

20  something that he considers private; and we've had

21  discussions about this, how it could possibly be an issue

22  if he is active, having unprotected sex.

23          Due to the sensitive nature of it, it was

24  not -- it was decided by our office not to include that

25  in the violation memorandum.

```
1              THE COURT:  Well, I'm -- well, --

2              PROBATION OFFICER COUR:  It came out in the

3    detention hearing.

4              THE COURT:  But my concern is:  He's apparently

5    expressed -- he's apparently willing to engage in

6    unprotected sex with people who have not been put on

7    notice that he is HIP -- HIV positive.  I'm very troubled

8    by that.

9              Mr. Rantisi, do you --

10             MR. RANTISI:  I can address that if you'd like,

11   Your Honor, at this time.  I was going to address it in

12   my argument, but since it's come up -- I once had the

13   same response that you had, when I first met Mr. Williams

14   and I started reading some of the allegations and reading

15   some of these reports.

16             Mr. Williams reports that his status is

17   classified at this point as "undetectable."

18             THE COURT:  It's what?

19             MR. RANTISI:  Undetectable.  "Undetectable"

20   means that there's an extremely low possibility of

21   transmitting the HIV, short of a blood transfusion.

22             Another way to say that is:  There's an

23   extremely low possibility of transferring HIV through

24   sexual acts or sexual relationships.

25             So, when you read that -- and I've since done
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1   independent research.  I was first educated on this by

2   Mr. Williams.  I've done independent research, just

3   simply Google searches; and you try to figure out what's

4   real and what's not, like anything else.  But you can go

5   on the Internet and find some of these reports and

6   articles.

7           Because he's had such -- because he's

8   classified as "undetectable," it's not going to transfer.

9   So that's number one.

10          THE COURT:  It's what?

11          MR. RANTISI:  It's not going to transfer by a

12  sex act.

13          THE COURT:  Are you saying that, based on your

14  understanding, that it's not possible to transmit this by

15  sexual contact?

16          MR. RANTISI:  The term is not "not possible."

17  The term is -- "extremely low chance" is the phrase --

18          THE COURT:  So the answer to my question is:

19  It is possible?

20          MR. RANTISI:  It would be possible, sure, just

21  like it would be possible to -- well, never mind.  Strike

22  that.

23          But the point is -- it's kind of like Magic

24  Johnson.  You hear about Magic Johnson having HIV; and

25  then all of a sudden you don't hear about it.  And you

1  don't hear about it, and you don't hear about it because

2  the medication -- and Mr. Williams has kept up on his

3  treatment.  He's vigilant in his treatment, and he's

4  kept --

5          THE COURT:  Well, Magic Johnson's not under

6  supervision --

7          MR. RANTISI:  He's not.

8          THE COURT:  -- by anybody, to my knowledge; and

9  I have no idea what his practice is, or has been,

10  concerning letting sexual partners know about this in

11  advance.

12          MR. RANTISI:  That, that's obviously all

13  correct.

14          But my point is that there's treatment

15  available.  There's treatment that my client stays --

16  that he adheres to.

17          Criminally, if you can't pass the HIV virus,

18  there's a -- I guess another way of saying this:  There's

19  an intent factor under Illinois statute -- and, I think,

20  most statutes -- that you have to intend to pass it on.

21  So, criminally, I don't think he's in violation of

22  anything because it's practically impossible to pass it

23  on.

24          Number two, if he is having sex with a condom,

25  then he's also, legally speaking, not committing a crime.

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1          THE COURT:  I don't -- I understand that.  But

2     it says here -- hold on just a minute.  He said he had

3     unprotected sex with most of these partners and that

4     approximately one quarter of them knew of his sex -- so

5     he had unprotected sex with most of these people.

6          MR. RANTISI:  I concede that.

7          And the concern is apparent now, now that

8     you've heard about this, because I can tell by your

9     reaction.  I think there is -- there's a stigma when you

10    talk about people with HIV.  There's an automatic

11    negative connotation.  I think this is, can be presented

12    for shock value; but when you read into this and you do

13    some research independently like I have, it supports what

14    Mr. Williams has represented to me.

15         So, yeah, when you first hear about it, having

16    unprotected sex and you have an HIV-positive status, you

17    say, "Whoa," and you step back and you say, "Wait a

18    second.  I've got a big problem with this."

19         But when you do some more learning on this

20    topic, you learn that it's -- and I'll tell you:  It's

21    not as bad as you once think.

22         THE COURT:  What's the government's

23    response/position on this?

24         MR. HANNA:  Whether it be HIV, or any other

25    type of disease, Your Honor, the defendant has and knows

1   that he has a communicable disease.  He's aware that it's

2   communicable; and it is very disturbing, to say the

3   least.  I intend to comment on that in my position on --

4           THE COURT:  Well, are you ask-- are you

5   recommending that there be a condition of supervision?

6           MR. HANNA:  Your Honor, the only issue is

7   formulating a condition that would apply to this

8   situation.  I mean, we're talking about intimate

9   relationships between Mr. Williams and other persons and

10  how we would require him to notify.  How would that be

11  enforced --

12          THE COURT:  Well, for example, I mean, I --

13  based on everything I've heard, I don't know why it would

14  be unreasonable to say -- because he is HIV positive,

15  even though the communicable aspect of it is minimal --

16  that he not have unprotected sex, or that he tell the

17  partner ahead of time that he has tested HIV positive.  I

18  don't see why that would be unreasonable.

19          Is there something unreasonable about that?

20          MR. RANTISI:  Your Honor, there's not anything

21  unreasonable about that.  The note I just received from

22  Mr. Williams as we're all sitting here listening to these

23  arguments being made -- you know, some of these apps that

24  he was using on the undisclosed phone, in a way they're

25  set up for the, for this type of disclosure.  So, and

1   I'll get into this in more detail later, but he did

2   disclose to certain people; and I understand --

3           THE COURT:  I'm sorry?

4           MR. RANTISI:  He did disclose to certain

5   partners.  I understand that he didn't always.

6           But the answer to your question is:  I don't

7   think it's unreasonable.

8           THE COURT:  All right.  Well, you may want to

9   confer with him before you confirm that.  But that's,

10  that's what I'm -- I'm planning to add a condition of

11  supervision that, because of his HIV status, he will not

12  have engaged in oral or anal or regular sexual

13  intercourse with any person unless he uses protection or

14  unless he informs them before the physical act that he is

15  HIV positive.

16          Did you get that, Jim?

17          PROBATION OFFICER COUR:  Not all of it, Your

18  Honor.  I'm still writing.

19          THE COURT:  Okay.

20          All right.  Have you already -- well, we've

21  talked about the fact of these letters.  Did you have any

22  other evidence to present?

23          MR. RANTISI:  No, Your Honor.

24          THE COURT:  So, let me first of all say that

25  the, the guideline range here is four to ten months; and

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1   supervised release, five years per count minus any term

2   of custody imposed on revocation.

3           Let me also now make reference to these

4   proposed conditions of supervision.  I believe that

5   Probation sent both sides the proposed conditions of

6   supervision ahead of today's hearing.  Is that correct?

7           MR. RANTISI:  Yes, Your Honor.

8           MR. HANNA:  Yes, Your Honor.

9           THE COURT:  And, Mr. Rantisi, did you have a

10  reasonable opportunity to review those conditions with

11  him?

12          MR. RANTISI:  Yes, Judge.

13          THE COURT:  And I know there may be an

14  objection about the one we just talked about; but other

15  than that, is there any objection to any of these

16  conditions?

17              (Brief pause in proceedings.)

18          MR. RANTISI:  No objections.

19          THE COURT:  Okay.  And, Mr. Hanna, do you have

20  any objections?

21          MR. HANNA:  No, Your Honor.

22          THE COURT:  Okay.  So I think now I'm ready to

23  hear your arguments concerning what the appropriate

24  sentence should be.

25          Mr. Hanna, will you go first, please.

```
 1           MR. HANNA:  May it please the Court, counsel.

 2           Your Honor, the conduct in this case is about

 3   as serious as it gets.  You have a defendant, Mr.

 4   Williams, who was originally sentenced in February of

 5   2005; and that was for enticing a minor to engage in sex

 6   and possession of child pornography.  The defendant at

 7   that time was 25 years old.  He's now 38.

 8           Back in '05, he was facing a mandatory minimum

 9   of five years.  He was facing a sentencing range of 87 to

10   108 months; and, ultimately, a 69-month sentence was

11   imposed, which was 18 months lower than the low end of

12   the guideline range.

13           Historically, he was released from supervision

14   in 2008, November of '08; and from that time till

15   April 2016 -- so shy of eight years or so -- he lived

16   with his mother and his stepdad here locally and appeared

17   to stay out of trouble for that period of time.

18           And then there was an opportunity in Kansas

19   where he was going to go live on his own, and that's

20   where he completely derailed.  And the derailing started,

21   actually, before he left for Kansas because, as far as

22   the timeline is concerned, he left in April; and it

23   appears that he purchased the phone, or had the

24   unauthorized phone, in March.  So a -- of 2016.  So a

25   month or so before he leaves for Kansas, he's preparing
```

1    for this year long of what we see in Exhibit 1 of the

2    defendant's type of behavior when he's not under the

3    amount of supervision that Mr. Williams needs.

4           And it's worth revisiting the original

5    presentence investigation report in this case to look at

6    the type of conduct that he was originally sentenced for,

7    which stated that, back in 2002 and then a couple years

8    after that, he engaged in sexual relations with at least

9    11 minor males; met them on Internet chat rooms; enticed

10   them to come with-- to meet with him, to engage in sexual

11   activity; participated in hundreds of sexually explicit

12   chats with numerous minors -- all in an attempt to locate

13   sexual partners.

14          He also communicated with other adults with

15   similar sexual interests.  These chats were also sexually

16   explicit, detailing their sexual activities with minors

17   and offering to share minor children with whom they had

18   sexual relations.  That's in paragraph 31 of the original

19   PSR in this case.  And paragraph 15 of that PSR states

20   that the age range that this group of adults who were

21   having sex with minors and swapping kids were ages

22   ranging between 7 to 16.  Paragraph 14 talks about the

23   defendant having oral sex and unprotected anal

24   intercourse with minors.

25          And it -- the updated violation report refers

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1   to a 2012 polygraph where the defendant committed, in the

2   course of his treatment, a sexual, a complete sex history

3   and disclosed to the polygrapher at that time that he had

4   sexual contact with approximately 44 minors, most of whom

5   he solicited on the Internet; and he routinely viewed

6   child pornography prior to his arrest.  That was all

7   related to his original case.  An enormous number of

8   minors that were contacted, physically contacted by this

9   defendant.

10          So he's out for a significant period of time

11  living with his parents, and then he goes off and over to

12  Kansas; and there we have the current status, which is a

13  very, very significant history of very, very serious

14  conduct, actively debating supervision by the Probation

15  Department, hiding a phone, hiding an email address,

16  hiding the fact that he's going onto Internet

17  applications and phone applications to find sex partners,

18  having unprotected sex with upwards of 50 partners.  He

19  used the device to view child pornography.  And he lied

20  to Probation throughout the course of this entire thing,

21  continued to drink, and continued to do the exact

22  conduct, or very, very similar conduct to which he was

23  originally sentenced.

24          Now, he hasn't gone as far as admitting that he

25  specifically sought out minors; but he's admitted to the

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1    Probation Office, and has admitted today in court, that

2    potentially two of the minor-- or two of the persons that

3    he's had sex with while he was in Kansas may have been

4    minors.  And those communications are not in a digital

5    format, not here in a presentation of a log before this

6    Court because after the polygraph exam and after Mr.

7    Williams knew that the Probation Department, or the

8    government, might be coming to look at those chats, he

9    decided to destroy that phone.  So he came clean in the

10   polygraph, and then he destroyed the evidence.

11          And in the course of that polygraph examination

12   in March of 2017, which was called a maintenance

13   polygraph, Mr. Williams -- and I'm looking at

14   Government's Exhibit Number 1 -- reported that he has

15   engaged in oral and anal sex with an estimated 50

16   different sexual partners since his compact to Kansas in

17   April of 2016.  Mr. Williams reported that he is HIV

18   positive and that -- quote -- most of these sexual

19   partners were aware of his HIV status.  He reported he

20   had unprotected sex with most of these partners, and

21   approximately one quarter of them knew of his sex offense

22   conviction.

23          He reported that some of the males he sexually

24   chatted with online told him that they were 13, 14, or

25   17 years old.  He disclosed that he had oral and anal sex

1  with two males who claimed to have been 18 years old, but

2  who Mr. Williams thinks may have been under the age of

3  18.

4          Regarding pornography, Mr. Williams reported

5  that he had posted naked pictures of himself online,

6  exchanged naked pictures with other men, and viewed

7  hidden pornography on his hidden cell phone.  And he had

8  been consuming alcohol once a week.

9          So the conduct in this case, Your Honor, is

10  very, very serious.  The allegations are very serious.

11  The things he's admitted to go back to his criminal

12  history, which is recidivism.  It's very likely that he

13  is likely to re-offend because of his repeated physical

14  conduct and hands-on offenses with minors, 11, 44, an

15  additional two.  He's routinely viewed child pornography

16  prior to his first arrest.

17          The characteristics of this defendant

18  demonstrate that he's a high risk for re-offending.  He's

19  been through sex offender treatment.  If I read it

20  correctly, he was in it for about seven years, and that

21  did not seem to have a positive effect on him.  He hid

22  information from the U.S. Probation Department for a

23  very, very significant period of time.  And a four- to

24  ten-month guideline range, Your Honor, in this case

25  undermines, or undercuts, the seriousness of the offense;

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
 1   and, quite frankly, the defendant has shown and

 2   demonstrated repeatedly that he is a danger to the

 3   community.

 4              So for those reasons, Your Honor, the

 5   government's asking that this Court impose a three-year

 6   sentence and max out his violation here for the statutory

 7   range and place him on a 10- to 15-year period of

 8   supervised release.

 9              Thank you.

10              THE COURT:  All right.  Thank you.

11              Mr. Rantisi.

12              MR. RANTISI:  Thank you, Your Honor.

13              I'll start with my disclaimer.  You've heard it

14   before.  I'm not here making excuses, but I do want to

15   give the Court some context on behalf of my client.

16              You, in great detail, you went through the

17   petition with him, and he admitted everything in that

18   petition.  So, again, none of this is meant to be

19   received as a denial of what has been alleged.

20              Your Honor, I'll start with the eight-year

21   period between his release and his transfer to Kansas.

22   As you've seen in the violation memorandum, as Mr. Hanna

23   just outlined, he lived in Dunlap with his parents; and

24   he was doing pretty well.  He complied with the

25   conditions in terms of supervised release; and by, by all
```

1   accounts, he didn't have any major issues.  There was

2   never a revocation brought until this revocation --

3   petition to revoke was brought to the Court.  In fact, I

4   would submit he was doing so well that Mr. Cour agreed to

5   allow him to go to Kansas.  So we know that there's a

6   system that exists that can, that will allow for him to,

7   to, to do well, to progress, and to stay out of trouble.

8          In that time period, he was compliant.  He was

9   successful.  He was productive.  He graduated from U of

10  I, as we mentioned earlier.  He basically worked as a

11  mechanic for his friends and family and others.  It was

12  difficult to initially gain employment, as I imagine it

13  would be under his circumstances as having to disclose

14  his criminal history.  Eventually, though, he was able to

15  gain employment in Kansas, and that's what led to the

16  transfer.

17         My point is that we can know, with absolute

18  certainty, that a system exists where he can be

19  productive and abide by the conditions of his supervised

20  release.  We have eight years of precedent showing us how

21  well he can do.

22         When he moved to Kansas in April of 2016,

23  without a doubt, he had some problems.  That's obvious.

24  He's admitted to those violations today.  But let's be

25  clear:  He relapsed; he did not re-offend.  There are no

1   allegations in the petition that show that he

2   re-offended.  But, of course, there were violations.  The

3   only crime he's committed was the failure to truthfully

4   disclose the email address pursuant to the Kansas Sex

5   Offender Registration Act.

6           I'd like to take some of these petitions

7   individually and go through them and give you some

8   background regarding the email address.  Again, this

9   isn't an excuse.  He told you as clear as he could:  He

10  had it; he knew about it; he didn't disclose it.

11          But I think some context is important.  He did

12  not actively create an email account a year ago, two

13  years ago, to circumvent the conditions.  This email

14  account has existed for approximately 15 years.  It was

15  set up through what used to be called "Insight" to get

16  cable.  It came up in 2016 that it was still around, and

17  that's when he started using it.  I don't know.  Does

18  that make a huge difference to the Court?  Maybe, maybe

19  not.  But I think it's better for you to know, Your

20  Honor:  He didn't decide one day, "Okay, I'm going to go

21  create this account so that I can use it and not have to

22  disclose it."

23          The sex offender treatment program was the

24  second violation listed in the petition, that he did not

25  participate in a program.  However, he's always

1    participated in treatment.  It was important that we

2    added that -- made that change to the violation

3    memorandum earlier, showing that he continued his

4    treatment at Midwest Counseling, even after he was

5    successfully discharged.  He continued for approximately,

6    I believe, another seven months or so on his own free

7    will.  He's always gone to treatment.  He's always paid

8    for it out of his own pocket.  According to him, he's

9    incurred over $20,000 in charges for this treatment; and,

10   contrary to what Mr. Hanna says, I would respectfully

11   disagree that it didn't take.  If it didn't take, then it

12   would not have taken ten years ago.  Instead, we have a

13   significant amount of time where it was proven to be

14   successful and that it was proven to help Mr. Williams

15   deal with the treatment that was necessary and, and

16   comply with supervised release.

17         When he moved to Kansas and started treatment

18   at Clinical Associates, as he told you earlier, Your

19   Honor, he was there for less than two months.  This is a

20   new facility with new members, new group leaders; and if

21   you think two, two months is enough time to go in and

22   talk about the issues and disclose all of the history

23   that Mr. Williams has, I would submit that's a tall task,

24   to land at a new place in another state and, all of a

25   sudden, just pick up where he left off where he was at

1   Midwest Counseling.

2           Yes, he failed to participate; but he's always

3   indicated to them -- to Clinical Associates, to the

4   probation officers -- that he's willing to go.  It just

5   so happens that, at this facility, it didn't work out

6   that way.

7           Regarding violation 3, that he did not install

8   a filtering software on any device, this has to do, of

9   course, with the phone that wasn't disclosed.  So he --

10  essentially, he had this phone so that he could contact,

11  through various social media, websites -- he could

12  contact other people, meet people that are in similar

13  circumstances to him, meet people who have similar

14  interests as him.  You know, he's always encouraged to

15  make friends, but he's never really given the means of

16  how to do that.

17          And no offense to you, Jordan, but we're

18  talking about a gay man in Illinois who's a registered

19  sex offender and is HIV positive.  Where does he meet

20  people?  Where does he make friends?  That's so difficult

21  to live in those shoes in this area -- and in Kansas, for

22  that matter -- and so he used what was available to him.

23  You mentioned earlier the social media website SCRUFF.

24  That's what these websites are for, to a certain extent.

25  You can be yourself.  You can meet people who have,

1  perhaps, also have HIV status; people who are also,

2  perhaps, registered sex offenders, because you can't go

3  down to Keller's and meet somebody who isn't going to be

4  turned away once they find this out about you.

5        Should he have disclosed the phone?

6  Absolutely.  But I think if you have some context and you

7  understand, perhaps, why he is going outside the lines,

8  violating the terms of supervision, it helps you

9  understand where he was coming from.

10        I'd like to touch briefly on his supervised

11  release period that was originally posed.  It was a

12  lifetime term.  You already mentioned, Your Honor, when

13  we first began today, the policy statement under Section

14  5D1.2 of the sentencing guidelines; that if there's a sex

15  offense, you may impose a lifetime term, as you are well

16  aware, but that the recommended term is the statutory

17  term, which is five years.

18        Taking that in consideration, along with the

19  following, there are two cases that were specifically

20  mentioned by my client to me.  One was USA v. Jacob

21  Wilkerson.  This was a case in front of Judge McDade.

22  This was about the same time that Mr. Williams was

23  sentenced.  Mr. Wilkerson was convicted of coercing or

24  enticing a minor, two counts, and he was sentenced to ten

25  years' supervised release.  I think this was actually,

1  maybe, five -- five or six -- days after Mr. Williams was

2  sentenced.  So that's a similar, similar case.  It's not

3  apples to apples, but none of them are.

4          Another case that was brought to my attention

5  is USA v. Groy [phonetic].  This is a more recent case in

6  front of you, Your Honor.  You sentenced the defendant

7  just a couple weeks ago.  He was convicted on three

8  counts of possessing child pornography.  He was sentenced

9  to eight years' supervised release.

10         So I just want to bring that up.  I know you're

11 already aware.  You've already made several references to

12 the supervised release, that that is available under the

13 sentencing here today.  But if you think it's necessary

14 to terminate or modify -- not terminate, but modify the

15 supervised release, I just wanted to, kind of, bring that

16 to your attention, especially considering the idea that

17 there shouldn't be a sentencing disparity between similar

18 defendants.

19         I'd like to respond to a few things that Mr.

20 Hanna brought up.  He spent a considerable time

21 discussing the original PSR and some of the findings that

22 were made then and there.  And I would submit to the

23 Court that -- I don't want to call it irrelevant, but I

24 would say it's close to irrelevant.  You know, he was

25 already -- Mr. Williams was already sentenced.  He

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1    already did his time.  He did 69 months.  The reason it

2    was below the guidelines is because, I believe, he

3    proffered against other -- whether it was one or

4    several -- defendants at the time; and so for us to try

5    to rehash his original sentence and the original reasons

6    and findings regarding that sentence, I would suggest,

7    are outside the scope of what we're doing here today.

8            He did not re-offend.  And I don't know if I

9    missed it; I was making a note, and I'm sorry if I'm

10   misquoting you.  But if Mr. Hanna said that he was using

11   this device, this undisclosed phone, to view child

12   pornography, that is not correct.  There's nothing

13   supporting that.  It was a condition that he not do that.

14   And, again, if I'm misquoting, I apologize.  I caught the

15   tail end of it.

16           Mr. Hanna said that Mr. Williams is likely to

17   re-offend.  I disagree with that.  I think we have the

18   eight years showing that he was not likely to re-offend.

19           Was the time in Kansas beyond incredible?  Of

20   course, it is, and that's why he's taking ownership of

21   that today.  But I think, with the right system, he has

22   shown that he can be productive.  As we mentioned a few

23   times already, he has two bachelor's degrees that he

24   obtained from U of I while he was on supervised release.

25   He was able to gain employment.  He was able to abide by

1   the conditions of his supervised release.

2           Your Honor, we would suggest, as far as a

3   recommendation -- actually, before I get into the

4   recommendation, I'll just point out that his mother is

5   here, as well as two friends.  You've received letters

6   from the same.

7           Our recommendation for Mr. Williams would be a

8   sentence at the low end of the guideline range.  The

9   guideline range is there for a reason.

10          I think the discussion today about the status

11  of Mr. Williams being HIV is presented partly for shock

12  value.  I don't mean to minimize it; but I also know that

13  Mr. Williams, through his, through my discussions with

14  him, he's taken steps to -- he's done his treatment.

15  He's reached a status labeled as "undetectable."  This is

16  some of the conversation I went through earlier.  There's

17  a very low chance of transferring HIV through sexual

18  relations.  It would require a blood transfusion.  And

19  any thought that he was being reckless is just

20  scientifically inaccurate.  I think the proposed

21  condition that the Court raised earlier would satisfy any

22  concern that the Court would have regarding that

23  particular issue.

24          Our recommendation would be at the low end of

25  the guideline range.  He's been in custody for three

1   months; and we'd also ask the Court to consider time

2   served, as well as consider a modification to the

3   supervised release term.

4           Thank you.

5           THE COURT:  All right.  Thank you.

6           Mr. Williams, is there anything you'd like to

7   say to the Court on your own behalf before I impose

8   sentence?

9           DEFENDANT WILLIAMS:  There is, Your Honor.

10          THE COURT:  Okay.  Go ahead.

11          DEFENDANT WILLIAMS:  Should I stay seated or --

12          THE COURT:  You can stay seated if you'd like.

13          DEFENDANT WILLIAMS:  Your Honor, I would like

14  to just state for the Court that I own and take

15  responsibility for violating the conditions of my

16  supervised release; and, most certainly, I understand

17  and, and appreciate the severity of my violations.

18          I also want to state that I take -- I own and

19  take responsibility for at times not accepting and

20  appreciating various conditions of my supervised release

21  over the last eight and a half years.

22          Very truthfully, I regret that I alone

23  sabotaged my potential and opportunity in Kansas City.

24  It was an opportunity that I had sought for a very long

25  time.  But, again, I own that.  I sabotaged that by my

1    own actions.

2          On moving there, I underestimated my need for

3    as much support as I ended up needing and, unfortunately,

4    ultimately ended up seeking it in other ways.  While

5    moving out there, I did have a support system in place

6    that was relatively small.  It included my brother and

7    his girlfriend.  I alone failed to encourage and ask for

8    their support.

9          Over the last years, I've greatly benefitted

10   from my participation in treatment.  I've learned a lot.

11   I have developed a comprehensive relapse prevention plan,

12   and I've always appreciated the insight and feedback from

13   the other group members in sex offender treatment, as

14   well as the facilitators.  And I, quite frankly, missed

15   my participation in my sex offender treatment group that

16   I was a part of for so long, and I look forward to be

17   able to go back to that.

18         I also acknowledge and recognize that I have

19   certain interpersonal issues that need to be resolved in

20   a more aggressive manner, one-on-one, in individual

21   therapy.  I had started that therapy prior to leaving for

22   Kansas; however, I never followed up upon continuing that

23   individual therapy while I was in Kansas.

24         In Peoria now, and over the last several years,

25   I have an amazing support system.  I'm exceptionally

```
 1   grateful for them.  I respect them and, and love them

 2   more than I can express.

 3            During my time since I was asked to move back

 4   to Illinois, I've established some aggressive short-term

 5   and long-term goals for myself to keep motivated.

 6            And, most notably, Your Honor, I apologize to

 7   the Court, as well as to U.S. Probation Officers Cour,

 8   Conn, and York, who I've had to take their time during

 9   their investigation and supervision of me in this matter.

10            THE COURT:  Is that it?

11            DEFENDANT WILLIAMS:  Yes, Your Honor.

12            THE COURT:  Okay.  Thank you.

13                 (Brief pause in proceedings.)

14            THE COURT:  The Court adopts the factual

15   findings and guideline application as contained in the

16   presentence report.

17            There are some interesting things about this

18   chronology:  certainly, the fact that you went for a long

19   time while you were under supervision here without any

20   major incidents.  But there's no doubt that when you

21   moved to Kansas, and even before you moved, I think you

22   were looking forward to living in a different

23   environment.  As I understand it, you came into

24   possession of the phone before you moved to Kansas, not

25   after.
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1        What you say about the email may be right.  I

2   don't think it changes anything.  You certainly had a

3   duty to report it, and you didn't; and you knew that, by

4   not reporting it, you were keeping important information

5   from them.

6        You did participate in the treatment.  Maybe it

7   did have some beneficial effects on you.  I, I am -- it

8   is correct that I'm struck by what you reported to them

9   in January of 2017.  Part of, part of the -- at least

10  some of these contacts, sexual contacts you had, I'm

11  sure, were only made possible by the phone that you were

12  hiding.  So it was part of the plan to evade the full

13  impact of the terms of supervision.

14        I am troubled by the HIV portion of this.  But

15  Mr. Rantisi's a very good lawyer, and he has certainly

16  done a good job of presenting this in the most positive

17  way and in a way that's most beneficial to your point of

18  view.  I'm still troubled about it because you know --

19  you knew before having sex with all these people that,

20  that you were HIV positive.  You may have felt confident

21  that you were not going to transmit HIV to these people;

22  but in the absence of being able to say that it was not

23  possible, you had to know that there was at least a

24  minimal risk; and it seems to me that, because of the

25  seriousness of HIV, you had a duty to let them know that,

1  or at least take steps to protect them from the

2  transmission of HIV.

3          And I'm particularly disturbed over the fact

4  that at least a couple of these people that we're talking

5  about were under the age of 18.

6          So, I could go through each of these violations

7  individually, but the bottom line is:  I think it's very

8  serious.  It shows a pattern.  But I think -- certainly

9  starting with your transfer to Kansas.  But maybe, more

10 importantly, it shows an attitude that you had while you

11 were living out there that you could manipulate the

12 conditions of your supervision, and that creates a very

13 dangerous situation.

14         The sentence I impose should reflect the

15 seriousness of the offense, promote respect for the law,

16 provide just punishment.

17         Your history and characteristics, there's been

18 reference to your past history.  I'm not going to dwell

19 on that.  I won't say it's irrelevant, but it's certainly

20 not the focus of this sentencing.

21         It should reflect the serious of the offense,

22 promote respect for the law, provide just punishment,

23 afford adequate deterrence to others, protect the public

24 from further crimes by you -- I do have a concern there.

25 It is correct that you did not, based on my

1   understanding, you did not re-offend, as your attorney

2   has said, which is good.  But based on your present

3   attitude, as I understand it, I still have a concern that

4   that -- there's an elevated chance of that happening in

5   the future.

6         I would also note that the parties have

7   indicated that they have no objection to the proposed

8   conditions of supervision, as I understand it, including

9   the additional provision that you not have sexual

10  contact -- I'm not sure -- what is the exact wording?

11  Oral, anal or sexual?

12         PROBATION OFFICER COUR:  Your Honor, what you

13  had read for the record, what I wrote down, was:  "The

14  defendant shall not engage in oral, anal, or regular

15  intercourse with any person unless the defendant uses

16  protected sex or notifies his sexual partners of his

17  medical status."

18         THE COURT:  Okay.

19         MR. RANTISI:  If I may, I don't know if the

20  term "regular" is the best term, and perhaps I could

21  suggest "vaginal."  I think it has --

22         THE COURT:  Okay.

23         MR. RANTISI:  -- a negative connotation --

24         THE COURT:  I agree.  I agree.  You're right.

25         There is no objection to any of those

1  conditions, so the following is the sentence that the

2  Court believes is sufficient, but not greater than

3  necessary, to fulfill all of the -- or to address all of

4  these various sentencing factors.

5          Supervised release is revoked.

6          It is the judgment of the Court that the

7  defendant be committed to the custody of the Bureau of

8  Prisons to be in prison for a term of 16 months on

9  Counts 1 and 2, to be served concurrently.

10          Following your release from custody, you shall

11  serve a ten-year term of supervised release.  And I would

12  also add that I'm -- I feel the ten years is necessary at

13  this time.  However, when you get out of prison, if

14  you're -- if you stay clear of problems for four or

15  five years, you could then file a petition with the

16  Court; and I could, as I fairly regularly do, then, take

17  another look at the need to, for the period of

18  supervision to continue.

19          Yes?

20          MR. RANTISI:  I'm going to ask if I could make

21  a statement on behalf of my client regarding that, if you

22  don't mind?

23          THE COURT:  Pardon?

24          MR. RANTISI:  I'd like to make a statement for

25  the record on behalf of what you just said.

```
 1              THE COURT:  Sure.

 2              MR. RANTISI:  This has been an issue of great

 3   contention with my client, and I know he would want me to

 4   say this.

 5              He informs me that the same statement was made

 6   to him at his sentencing; that "if you come back in two

 7   or three years and everything's good, that your

 8   supervised release will be terminated."

 9              THE COURT:  I never made such a statement to

10   him.

11              MR. RANTISI:  Well, and I didn't get the

12   transcripts.  I just want to do this on behalf of him,

13   based on what he --

14              THE COURT:  I can tell you:  Based -- I don't

15   have the transcript either, but I can tell you that I

16   would never have made that statement under those

17   circumstances.

18              MR. RANTISI:  Very good, Your Honor.  I

19   appreciate that.

20              THE COURT:  I, I might have said, "After you've

21   been on supervision for a period of time, --

22              MR. RANTISI:  That's right.

23              THE COURT:  -- you can come back," --

24              MR. RANTISI:  That's right.

25              THE COURT:  -- but any idea that it would be
```

1    two or three years is not correct.

2              And did he come back to the Court?

3              MR. RANTISI:  And he did, and the motion was

4    denied.

5              THE COURT:  Right.

6              MR. RANTISI:  And, again, I know he wants me to

7    say this --

8              THE COURT:  No.  I understand.  That's fair.

9    It's certainly not surprising, but -- anyway.

10             While on supervised -- excuse me.

11             Within 72 hours of your release from custody of

12   the Bureau of Prisons, you shall report in person to the

13   probation office in the district to which you are

14   released.

15             While on supervision, you shall not commit

16   another federal, state, or local crime.

17             You shall not possess a controlled substance.

18             You shall submit to one drug test within

19   15 days of release and two drug tests thereafter as

20   directed.

21             You shall cooperate in the collection of DNA as

22   directed by Probation or the Bureau of Prisons.

23             You shall not possess a firearm, ammunition,

24   destructive device, or any other dangerous weapon.

25             You shall comply with the requirements of the

1  Sex Offender Registration and Notification Act as

2  directed by the probation officer, the Bureau of Prisons,

3  or any state sex offender registration agency in which

4  you reside, work, are a student, or were convicted of a

5  qualifying offense.

6          You shall comply with the following conditions

7  of supervision.  I've taken a careful look at each of

8  these.  I believe each of them is appropriate to provide

9  Probation with the proper tools to most effectively

10  monitor and supervise the defendant and also, perhaps

11  most importantly, maximize the possibility that the

12  defendant will successfully complete supervision.

13          Number 1:  The defendant shall not knowingly

14  leave the judicial district without permission of the

15  Court or Probation.

16          Number 2:  You shall report to the probation

17  officer in a reasonable manner and frequency directed by

18  the Court or Probation.

19          Number 3:  You shall follow the instructions of

20  the probation officer as they relate to your conditions

21  of supervision.  Any answers you give in response to the

22  probation officer's inquiries as they relate to your

23  conditions of supervision must be truthful.  This

24  condition does not prevent you from invoking your Fifth

25  Amendment privilege against self-incrimination.

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
 1          Number 4:  You shall notify the probation
 2   officer at least ten days prior, or as soon as knowledge
 3   is gained, of any -- excuse me -- of any change of
 4   address or employment, which would include both the
 5   change from one position to another, as well as a change
 6   of workplace.
 7          Number 5:  You shall refrain from any use of
 8   alcohol.  You shall, at the direction of the Probation
 9   Office, participate in a program for alcohol treatment,
10   including testing to determine if you have used alcohol.
11   You shall abide by the rules of the treatment provider.
12   You shall pay the costs of the treatment to the extent
13   you are financially able to pay.  The probation officer
14   shall determine your ability to pay and any schedule for
15   payment, subject to the Court's review upon request.
16          Number 6:  If there is reasonable suspicion to
17   believe that you are in violation of a condition of
18   supervised release, you shall submit to the search of
19   your person, property, or automobile under your control
20   by the Probation Office, or any other authorized person
21   under the immediate and personal supervision of the
22   Probation Office, without a search warrant to ensure
23   compliance with all conditions of release.
24          Number 7:  You shall participate in a sex
25   offender treatment program as directed by Probation.  You
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1    shall abide by the rules of the treatment provider.  You

2    shall submit to physiological testing, including

3    polygraph testing.  You shall pay the costs of the

4    treatment to the extent you are financially able to pay.

5    Probation shall determine your ability to pay, and any

6    schedule for payment is subject to the Court's review

7    upon request.

8          Number 8:  You shall have no contact with any

9    person under the age of 18, except in the presence of an

10   adult who is aware of the nature of your background and

11   current offense and who has been approved by the U.S.

12   Probation Office, or in the course of normal commercial

13   business, or in case of -- other cases of unintentional

14   and incidental contact.

15         Number 9:  You shall participate with the

16   probation officer's -- Probation Office's Computer and

17   Internet Monitoring Program, CIMP, during your term of

18   supervision.  The monitoring program will start as soon

19   as possible after your supervision term begins.  You

20   shall sign the rules of the Computer Internet and

21   Monitoring Program and comply with the conditions of this

22   program.

23         During this time, you shall install filtering

24   software on any computer you possess or use which will

25   monitor access to websites that depict sexually explicit

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

 1    contact -- conduct, as defined in 18 USC 2256(2)(A) and

 2    (B).

 3           You shall allow the probation office

 4    unannounced access to any computer you possess or use to

 5    verify that the filtering software is functional.  You

 6    shall pay the costs of the program to the extent you are

 7    financially able to pay.  The probation office shall

 8    determine your ability to pay, and any schedule for

 9    payment is subject to the Court's review upon request.

10           And number 10 -- would you read this again,

11    please?

12           PROBATION OFFICER COUR:  Yes, Your Honor.  Give

13    me a second.

14           THE COURT:  Okay.

15              (Brief pause in proceedings.)

16           PROBATION OFFICER COUR:  The proposed language

17    is, "The defendant will not engage in oral, anal, or

18    vaginal intercourse with any person, unless he uses

19    protected sex or notifies his sexual partner of his

20    medical status."

21           MR. RANTISI:  No objection.

22           THE COURT:  Okay.  All right.

23           Was there a waiver -- oh, strike that.

24           You do, of course, have a right to file a

25    Notice of Appeal in this case.  If it is your wish to

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

```
 1   appeal, I instruct you that any Notice of Appeal must be
 2   filed with the Clerk of the Court within 14 days of
 3   today's date.  As your attorney, Mr. Rantisi has an
 4   absolute responsibility to file that Notice of Appeal for
 5   you, if that is your wish.
 6               Do you understand?
 7               DEFENDANT WILLIAMS:  I do, Your Honor.
 8               THE COURT:  In terms of recommendations to the
 9   Bureau of Prisons, there is a camp across the river.  Do
10   you want me to recommend FCI Pekin Camp?
11               MR. RANTISI:  You can, although I don't know if
12   he qualifies with his --
13               THE COURT:  I don't either.
14               MR. RANTISI:  But we would ask for close to
15   home.
16               THE COURT:  Minimum --
17               MR. RANTISI:  Yeah.  As low security as
18   possible; across the -- if Pekin is a possibility, then
19   we would ask for that.
20               THE COURT:  Okay.  So, I will first recommend
21   the camp at Pekin.  If for some reason they, the Bureau
22   of Prisons determines that that's not appropriate, then I
23   will recommend a, the lowest possible security facility
24   as close to his family here as possible.
25               MR. RANTISI:  Thank you.
```

USA v. JORDAN A. WILLIAMS, Case No 03-10110 -- 7/26/17

1           THE COURT:  Anything else?

2           MR. HANNA:  Nothing from the government, Your

3  Honor.

4           MR. RANTISI:  Nothing further.  Thank you.

5           THE COURT:  I would ask the Marshal's Office to

6  give him a few minutes, if he wishes to talk to his

7  family.

8           You can't have physical contact with him; but

9  if you move into the front row, you can get a little

10 closer, and you can talk to him for a couple minutes

11 before he leaves.

12          We're in recess.

13          (Hearing concluded, 12:04 p.m.)

14                * * * * * * * * * *

15                REPORTER'S CERTIFICATE

16     I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify

17 that the foregoing is a correct transcript from the

18 record of proceedings in the above-entitled matter.

19          Dated this 13th day of November, 2017.

20

21          s/Lisa Knight Cosimini
            Lisa Knight Cosimini, RMR-CRR
22          Illinois License # 084-002998

23

24

25